**Carmello TORRES, Petitioner,**

v.

**UNITED STATES of America, Respondent,**

**No. 73 C 1211.**

United States District Court,
E. D. New York.

Jan. 24, 1974.

Carmello Torres, pro se.

Edward John Boyd V, Acting U. S. Atty., E. D. N. Y., by Kenneth Kaplan, Asst. U. S. Atty., Brooklyn, N. Y., for respondent.

## MEMORANDUM ORDER

NEAHER, District Judge.

Petitioner, Carmello Torres, is presently serving a five-year sentence imposed by this court on January 23, 1973, subsequent to his plea of guilty on November 8, 1972, to an indictment (72 CR 1173) charging him with unlawfully carrying a firearm during the commission of a felony: possession of heroin with intent to distribute. 18 U.S.C. § 924(c)(2). The related felony indictment (72 CR 1129), which charged separate counts of unlawful possession of heroin and cocaine, was dismissed following sentence on the plea. Petitioner seeks a withdrawal of that plea as involuntary and a setting aside of his sentence or, alternatively, the fulfillment, under Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), of an alleged promise of a probationary sentence. The court treats his application as one for a writ of habeas corpus under 28 U.S.C. § 2255 (1970).[1]

In determining whether to grant an evidentiary hearing on such a claim the court is mindful of its obligation to do so "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. See Taylor v. United States, 487 F.2d 307, at 308 (2 Cir., 1973); Dalli v. United States, 491 F.2d 758 (2 Cir., 1974). A hearing is not required, how-

---

1. Petitioner also appears to rely on F.R. Crim.P. 32(d), Withdrawal of Plea of Guilty. In view of the conclusion that petitioner is not entitled to the relief prayed for, it makes no difference what designation petitioner may have intended for his peti- tion. See United States v. Kent, 397 F.2d 446, 448 n. 1 (7 Cir. 1968), cert. denied, 393 U.S. 1081, 89 S.Ct. 860, 21 L.Ed.2d 773 (1969); 8A J. Moore Federal Practice ¶ 32.07 [4] (2d ed. 1973).

ever, "where the allegations are insufficient in law, undisputed, immaterial, vague, conclusory, palpably false or patently frivolous." United States v. Malcolm, 432 F.2d 809, 812 (2 Cir. 1970); Dalli v. United States, *supra,* 491 F.2d at 760 ("Mere generalities or hearsay statements will not normally entitle the applicant to a hearing . . ."). Cf. Taylor v. United States, *supra,* 487 F.2d at 308 (evidentiary hearing required where there are issues of fact raised in conflicting affidavits).

Petitioner claims that his guilty plea was obtained by coercion, threats, promises, and the illegal use of the bail bond system, in that (1) he was arrested without a warrant or probable cause; (2) the arrest was followed by an illegal search; (3) immediately upon his plea of guilty his bond of $50,000 was reduced to $3,000; and (4) his attorney promised him a low bond and a probationary sentence if he would plead guilty to the firearm charge.

■■ Dealing first with petitioner's claims concerning the alleged illegal arrest and search, it is well established that a guilty plea waives a collateral attack on evidence obtained thereby. Simmons v. United States, 354 F.Supp. 1383, 1388–1389 (N.D.N.Y.1973). See United States ex rel. Rogers v. Warden of Attica State Prison, 381 F.2d 209, 212–213 (2 Cir. 1967). Nevertheless, if there is a deprivation of a constitutional right which can be shown to have a coercive impact on a subsequent guilty plea, the voluntariness of the plea is called into question. See Chambers v. Florida, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716 (1940); Pennsylvania ex rel. Herman v Claudy, 350 U.S. 116, 76 S.Ct. 223, 100 L.Ed. 126 (1956); United States ex rel. Williams v. Follette, 408 F.2d 658 (2 Cir. 1969), vacated on other grounds, McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). Petitioner's application is entirely conclu-

sory, however, both as to the grounds claimed to constitute the factual basis for the alleged illegal arrest, search and seizure, and as to the connection between their alleged illegality and petitioner's ultimate decision to plead guilty.

■ A review of the record reveals that petitioner's claim concerning the "reduction" of his bail is patently frivolous and a complete misdescription of what occurred. The court set bail for the first time on the indictment in 72 CR 1173 only after the plea. A $50,000 surety bond was the amount of petitioner's bail on the related drug possession charges (72 CR 1129). The court revoked this bail on the representation of the Assistant United States Attorney that the government would dismiss the narcotics charges at the time of sentence on the gun possession plea. The bail set after the plea was a $25,000 personal bond, secured by $3,000 cash, and was based upon the anticipated dismissal of the related charges, petitioner's age and claimed physical condition, and the court's assessment of the likelihood that he would appear for sentencing.[2] Hence petitioner's claim is wholly unsubstantiated and without merit.

The court is left, then, with petitioner's bare allegations that his attorney promised him such a reduction and a probationary sentence if he would plead guilty to the firearm charge. At the outset it should be noted that petitioner's allegations are totally without support in the record [3] and lack further explication in petitioner's application. However, the record is not necessarily conclusive on the question. See Fontaine v. United States, 411 U.S. 213, 93 S.Ct. 1461, 36 L.Ed.2d 169 (1973). Many federal courts have expressed, with legitimate grounds, doubt about whether the formalistic and possibly programmed answers by a defendant, which tend to establish the voluntariness of the plea when taken at face value, truly reflect the reality of the situation,

2. Transcript, November 8, 1972, at 11–18 (72 CR 1173).

3. *Id.* at pp. 6, 8, 9, 11, 13, 14 and 16.

or, at least, defendant's understanding of it.[4] Denials of promises or inducements during the guilty plea hearing may often be "mere ritual," generated "out of fear that a truthful response would jeopardize the bargain." Hilliard v. Beto, 465 F.2d 829, 831 (5 Cir. 1972).[5]

Here, petitioner has not attempted to make known exactly what he claims was said to him. It is clear that if he is referring to an erroneous sentence estimate by his counsel, this would not render his plea involuntary. United States ex rel. Scott v. Mancusi, *supra* n. 4, 429 F.2d at 108. See also Holland v. United States, 406 F.2d 213, 216 (5 Cir. 1969). Even if petitioner's counsel had made statements to him strong enough to give rise to an expectation that his plea would result in a probationary sentence, there is no allegation that such an expectation was induced by the government.

In fact, the record is conclusive that both the attorneys and the court were under the impression that the statute under which the accused was convicted, 18 U.S.C. § 924(c)(2), required a mandatory *minimum* sentence of at least one year of imprisonment which precluded probation. While that impression may have been erroneous,[6] the court, in view of it, and even reading petitioner's allegation as broadly as possible, Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), cannot infer inducement by the government in this case. Absent such inducement, the petition is insufficient in law, United States ex rel. Scott v. Mancusi, *supra*, 429 F.2d at 108; United States ex rel. McGrath v. LaVallee, *supra* n. 4, 319 F.2d at 314; Anderson v. United States, 338 F.2d 618 (9 Cir. 1964), and must be dismissed. United States v. Malcolm, *supra*, 432 F. 2d at 812.

There remains only the question of whether petitioner's allegation of a "guarantee" of probation by his own counsel would, if proved, amount to impermissible coercion in the circumstances of this case. If such a statement deprived the plea of the character of a voluntary act, it is void. Machibroda v. United States, 368 U.S. 487, 493, 82 S. Ct. 510, 7 L.Ed.2d 473 (1962). Several courts have indicated that statements by the accused's attorney might, in certain circumstances, render a plea involuntary.[7]

4. See Mosher v. LaVallee, 351 F.Supp. 1101, 1107 (S.D.N.Y.1972), aff'd 491 F.2d 1346 (2 Cir. 1974); United States ex rel. Scott v. Mancusi, 429 F.2d 104, 113 n. 1 (2 Cir., 1970) (dissenting opinion), cert. denied, 402 U.S. 909, 91 S.Ct. 1385, 28 L.Ed.2d 651 (1971); Gallegos v. United States, 466 F.2d 740, 742 (5 Cir., 1972). See also United States ex rel. McGrath v. LaVallee, 319 F.2d 308, 314 (2 Cir. 1963); United States v. Tateo, 214 F.Supp. 560, 564 (S.D.N.Y.1963).

5. The *Hilliard* case suggests that attacks of this type might be avoided if inquiry at the hearing is made of the defendant *and the attorneys* concerning any negotiations or bargaining which underlie the plea, in order that the judge might truly know what motivates it. 465 F.2d at 832–833. See also A. B.A. Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty, Part III, § 3.3; Comm. on Rules of Practice and Procedure of the Judicial Conference of the United States, Proposed Amendments to Criminal Rule 11, 52 F.R.D. 409, 416–17, 423–29 (1971).

6. A re-reading of the statute, both before and after the 1971 amendments, and the legislative history support the view that there was no statutory prohibition on the court's imposing a probationary or suspended sentence, despite the expressed minimum. See H.R.Rep. No. 1577, 90th Cong., 2d Sess. (1968), 3 U.S.Code Cong. & Admin.News 1968, pp. 4410, 4431 (1968); S.Rep. No. 91–1253, 91st Cong., 2d Sess. (1970); 3 U.S. Code Cong. & Admin.News 1970, pp. 5804, 5848 (1970). Such an interpretation of the statute may render petitioner's probation allegation not patently incredible; it does not substantiate it.

7. Mosher v. LaVallee, *supra*, 491 F.2d 1346 (2 Cir. 1974), (false statement by defense counsel to petitioner that a promise of a minimum sentence had been made by the judge who thereafter imposed the maximum sentence); Cooks v. United States, 461 F.2d 530 (5 Cir. 1972), (significant misleading statements of counsel as to the severity of sentence if the accused were found guilty rather than pleaded guilty); United States

■ In this case there is no allegation that petitioner was misled prior to his plea as to the severity of the sentence he was exposed to, that his counsel had fraudulently contrived to distort the record, or that he was falsely advised by counsel of an agreement with the judge or the prosecuting attorney.[8] Instead petitioner states that his counsel told him "that he could be assured of probation," and petitioner adds that he "believed that the attorney was indeed speaking on behalf of the court." The short answer to such a claim is that, in addition to the many points in the transcript which refute it, *supra* n. 3, the allegations are such that "petitioner has failed entirely to particularize through the statement of any relevant facts his wholly conclusory claim of constitutional infirmity." United States ex rel. Homchak v. New York, 323 F.2d 449 (2 Cir. 1963); United States v. Simpson, *supra* n. 7, 141 U.S.App.D.C. 8, 436 F.2d at 164. See United States ex rel. Curtis v. Zelker, 466 F.2d 1092, 1098 (2 Cir. 1972), cert. denied, 410 U.S. 945, 93 S. Ct. 1405, 35 L.Ed.2d 612 (1973); United States ex rel. LaFay v. Fritz, 455 F.2d 297, 301–303 (2 Cir.), cert. denied, 407 U.S. 923, 92 S.Ct. 2471, 32 L.Ed.2d 809 (1972).

■ In reaching that conclusion, the court is not unmindful of the foreign language barrier faced by petitioner from the outset of the criminal proceedings brought against him. It is the court's own recollection of those proceedings that petitioner had little, if any, difficulty in understanding the import of the questions directed to him through a Spanish interpreter and in formulating intelligent and responsive answers. If the language barrier may have contributed to a misunderstanding between him and his counsel as to what sentence to expect upon a plea of guilty, it was not brought out at the hearing, which, as indicated, entirely negates such a suggestion. In any event, a subjective test of voluntariness which depends on the accused's state of mind has been expressly rejected in this Circuit. United States ex rel. LaFay v. Fritz, *supra*, 455 F.2d at 303.[9]

In sum, petitioner in this case has failed to support his application with any affidavit at all demonstrating relevant facts from which the court could conclude, if proved at an evidentiary hearing, either that a coercive promise was made to him, or that he was coerced by an illegal arrest or the fruits of an unlawful search and seizure. In all other respects, petitioner's application is patently frivolous and without merit. Accordingly, the petition, being insufficient on its face, must be denied.[10]

So ordered.

---

8. In the subsequently dismissed narcotics indictment (72 CR 1129), defendant was charged in separate counts with selling nearly half a kilogram of heroin on one occasion and 27.17 grams of cocaine on another. He was thus faced with a possible prison sentence totaling 30 years on that indictment in addition to the one year minimum and 10

v. Simpson, 141 U.S.App.D.C. 8, 436 F.2d 162 (1970), (false advice from counsel of an outright arrangement with the judge for a sentence under the Youth Correction Act, if the accused gave appropriate, programmed responses to the voluntariness questions); Wellnitz v. Page, 420 F.2d 935 (10 Cir. 1970), (reckless promise of counsel that a specific sentence would follow a guilty plea). Cf. Brady v. United States, 397 U.S. 742, 750–751, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

year maximum on the indictment to which he pleaded. His plea to the latter charge admitted the serious felony of possessing heroin, so that he could hardly have expected even the minimum under the circumstances.

9. The need for objective facts to support a habeas petition was made clear in United States ex rel. Curtis v. Zelker, *supra*, 466 F.2d at 1098.

10. The denial of an evidentiary hearing in this case does not preclude petitioner from remedying the defect in his petition by more fully particularizing his claim to show that what was involved was more than a mere "*subjective* mistaken impression or belief that a promise has been made. . . . " Mosher v. LaVallee, *supra*, 491 F.2d at 1347.